USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/4/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

KEVIN JOHNSON,

                               Plaintiff,

     -v-

JEROME BURNS and MATTHEW WRIGHT,

                               Defendants.

------------------------------------------------------------X

15 Civ. 4789 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Between January 9 and 12, 2017, the Court presided over a jury trial in which plaintiff Kevin Johnson pursued false arrest and malicious prosecution claims under 42 U.S.C. § 1983 against defendants Jerome Burns and Matthew Wright, both of whom are police officers. The jury returned a mixed verdict. It found Burns not liable on either claim. It found Wright liable for false arrest but not malicious prosecution. The jury awarded Johnson nominal damages from Wright of $0.50 (*i.e.*, 50 cents).

This decision resolves Wright's post-trial motion. Dkt. 72. Wright argues that, as to the false arrest claim against him—the sole claim on which he was held liable—he is entitled to a judgment in his favor either (1) as a matter of law under Federal Rule of Civil Procedure 50, or (2) based on qualified immunity.

For the following reasons, the Court denies that relief, but sets aside the jury verdict and orders a new trial.

I.      **Background**

     A.     **Johnson's Arrest and Filing of this Action**

On August 30, 2013, Johnson was arrested and charged with criminal sale of a controlled substance, criminal possession of a controlled substance—both relating to heroin—and possession of marijuana. Dkt. 72, Ex. B ("Trial Transcript" or "Tr.") at 101–02. These charges were later dismissed because the statutory time period to prosecute had expired.

On June 19, 2015, Johnson filed this § 1983 action against Burns and Wright. Dkt. 1.

**B.     Trial Testimony**

At trial, the jury heard testimony from Johnson, from both defendants, and from witness Gilda Giscombe. All four supplied accounts of Johnson's arrest.

Giscombe testified as follows: She was out shopping on August 30, 2013, when she encountered Johnson, whom she knew from her neighborhood, near West 126th Street and St. Nicholas Avenue. Tr. at 33. Johnson asked her for money to use to take the subway. *Id.* at 33–34. She gave him a $10 bill, which she intended to split with him, such that they would each keep $5. *Id.* at 34. She then walked for some distance with Johnson and "a couple of gentlemen" that Johnson was with, whom Giscombe did not know. *Id.* at 34–35. Johnson decided to go into a McDonald's near West 125th Street and St. Nicholas Avenue to get change for the $10 bill; Giscombe waited for him outside. *Id.* at 35. Sometime thereafter, he came out and gave her change, and then went back into the restaurant. *Id.* at 46–47. Multiple officers then ran into the McDonald's and brought Johnson out, while another officer detained Giscombe. *Id.* at 35. One of the men whom Johnson had been walking with, whom Giscombe said went by the name "Justice," started throwing drugs out of his pockets and onto the ground. *Id.* at 36. Officers searched both Johnson and Giscombe and found one glassine of heroin on Giscombe. *Id.* at 37. Giscombe had purchased the heroin in the Bronx before encountering Johnson. *Id.* at

37. Johnson had not sold Giscombe the heroin. *Id.* at 38–39. Giscombe and Johnson were both arrested; Giscombe later pled guilty to possessing heroin. *Id.* at 47.

Johnson testified as follows: He was walking, with an acquaintance he knew as "Justice" but whose true name "could be" Johnny Smith, to the subway station near West 125th Street and St. Nicholas Avenue, when he realized he did not have money for the train. *Id.* at 55, 71–72. He then saw another acquaintance, Giscombe, who said she would give him money. *Id.* at 55. Giscombe handed him one bill, which may have been a $10 bill. *Id.* at 55, 76. Johnson needed to get change for her, so he walked to a McDonald's and went inside to purchase a coffee for Giscombe at her request. *Id.* at 56. While in line for the coffee, Johnson was approached by Burns, who arrested Johnson, Giscombe, and Smith. *Id.* at 56, 79–80. Johnson observed Smith pulling heroin out of a "pouch" that Smith was wearing. *Id.* at 84. Giscombe had heroin on her person as well. *Id.* at 84. Johnson had not had any heroin on him. *Id.* at 60, 84.

Wright testified as follows: While working as an undercover officer in the New York Police Department ("NYPD"), Wright observed Johnson, Giscombe, and Smith standing on the west side of the corner of West 126th Street and Eighth Avenue. *Id.* at 89, 92, 106. Wright saw Giscombe hand money to Johnson. *Id.* at 90. Wright then followed Johnson, Giscombe, and Smith as the group walked to a McDonald's restaurant on the southwest corner of West 125th Street and St. Nicholas Avenue. *Id.* at 90. Wright observed Johnson enter the McDonalds with Smith. *Id.* at 94. When Johnson exited approximately one minute later, Wright "observed the plaintiff with his hand open, palm to the sky, in a cupped position, with numerous glassines of heroin in it." *Id.* at 94–95. After seeing Johnson hand Giscombe the glassines, *id.* at 98, Wright followed Johnson as Johnson re-entered the McDonald's, *id.* at 99. While following Johnson into the restaurant, Wright used his radio to inform fellow members of his narcotics field team,

3

including Burns, of his observations. *Id.* at 103. Once inside the restaurant, Wright observed, from a slight distance, Burns enter the McDonald's and place Johnson under arrest. *Id.* at 100.

Burns testified as follows: On the day of Johnson's arrest, Burns, a detective with the NYPD, was working with Wright. *Id.* at 226. Burns, who was designated the "arresting officer" for purposes of this assignment, rode in an unmarked police vehicle with another officer, driving around in the general vicinity of Wright, who was relaying to Burns information from his undercover observations. *Id.* at 226–227. Burns received information from Wright "that a sale had taken place and that the sale subject was inside of the McDonald's." *Id.* at 226–227. Burns exited the police vehicle and entered the McDonald's, where he observed Johnson for the first time. *Id.* at 200, 228. Johnson was "standing alone," and Burns began to approach him. *Id.* at 202. As Burns approached, he saw Johnson drop two glassines of heroin onto the ground near his feet. *Id.* at 219, 228–229. Burns testified that he observed Johnson drop the heroin prior to conducting the arrest and cited that observation as a reason he arrested Johnson. *Id.* at 219, 228–29. Only after seeing the heroin on the ground did Burns instruct Johnson to turn around and put handcuffs on him. *Id.* at 228. Burns then "retrieved the heroin off the ground" and "escorted [Johnson] out of the McDonald's." *Id.* at 228.

### C. The Jury's Verdict

The jury returned a verdict on January 11, 2017, finding Burns not liable on either claim and finding Wright liable for false arrest but not malicious prosecution. Dkt. 72, Ex. A ("Verdict Form") at 1–2. It awarded nominal damages in the amount of 50 cents. It did not award compensatory or punitive damages. *Id.* at 2–3.

The verdict form posed a series of additional factual questions aimed at assisting the Court, if necessary, to resolve the defendants' claims of qualified immunity. On July 12, 2017, the jury returned with "yes" answers to the following six questions:

- "Did Matthew Wright reasonably believe, even if mistaken, that he observed Kevin Johnson hand an object or objects to Gilda Giscombe on August 30, 2013?"

- "Did Matthew Wright inform Jerome Burns that he (Matthew Wright) observed Kevin Johnson sell heroin on August 30, 2013?"

- "Did Jerome Burns observe Kevin Johnson drop heroin on the ground on August 30, 2013?"

- "Did Jerome Burns recover heroin from or near Kevin Johnson on August 30, 2013?"

- "Did Jerome Burns recover marijuana from Kevin Johnson on August 30, 2013?"

- "Did Jerome Burns reasonably believe, even if mistaken, that any of the drugs that were recovered on August 30, 2013 belonged to Kevin Johnson?"

*Id.* at 3–4. The jury deadlocked on the following two questions:

- "Did Matthew Wright reasonably believe, even if mistaken, that he observed Gilda Giscombe hand Kevin Johnson an amount of money on August 30, 2013?"

- "Did Matthew Wright reasonably believe, even if mistaken, that he witnessed Kevin Johnson sell heroin on August 30, 2013?"

*Id.* As to the first of the questions on which the jury deadlocked, both parties had agreed at trial that Giscombe had handed Johnson money shortly before his arrest. Tr. at 34, 55, 76, 90.

### D. Procedural History

On January 26, 2017, Wright filed this motion for judgment as a matter of law pursuant to Rule 50 and for qualified immunity, Dkt. 71, as well as a supporting declaration, Dkt. 72, and a supporting memorandum of law, Dkt. 73. On February 2, 2017, Johnson filed a memorandum of law in opposition. Dkt. 74.

5

## II. Applicable Legal Standards

The Court reviews first the elements of false arrest, and then the standards governing motions under Rule 50 and governing claims of qualified immunity.

### A. False Arrest

Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must establish (1) the violation of a right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56 (1978).

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996), *cert. denied*, 528 U.S. 946 (1999) (internal citations omitted); *accord Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). Under that law, a plaintiff bringing a claim for false arrest must show that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (citation omitted).

A confinement is privileged where the arresting officer had probable cause to arrest. *See Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003); *Jenkins*, 478 F.3d at 84 ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." (internal quotation marks and citation omitted)). Probable cause exists "when the arresting officer has knowledge or

reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Lacey v. Daly*, 26 F. App'x. 66, 67 (2d Cir. 2001) (summary order) (quoting *Singer*, 63 F.3d at 119) (internal quotation marks omitted).

The lawfulness of an arrest does not depend on an ultimate finding of guilt or innocence. *Pierson v. Ray*, 386 U.S. 547, 555 (1967); *Wiltshire v. Wanderman*, No. 13 Civ. 9169 (CS), 2015 WL 4164808, at *3 (S.D.N.Y. July 10, 2015) (that charges were later dropped is "irrelevant" to question of whether probable cause existed at time of arrest). Rather, "[w]hen determining whether probable cause exist[ed] courts must consider those facts available to the officer at the time of the arrest." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citation omitted) (emphasis in *Panetta*); *accord Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."). Moreover, "probable cause does not require an awareness of a particular crime, but only that some crime may have been committed." *Ackerson v. City of White Plains*, 702 F.3d 15, 20 (2d Cir. 2012) (internal quotation marks and citation omitted). Accordingly, "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). "[A]n arrest is not unlawful so long as the officer ha[d] . . . probable cause to believe that the person arrested . . . committed *any crime*." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (emphasis added).

**B.     Rule 50**

7

A party who moved at trial for judgment as a matter of law under Rule 50(a) may file a renewed motion after trial for judgment as a matter of law under Rule 50(b). *Id.* "Where a jury has rendered a verdict for the non-movant, a court may grant [a motion for judgment as a matter of law under Rule 50(b)] only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that a reasonable juror would have been compelled to accept the view of the moving party." *MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 180 (2d Cir. 2016) (internal quotation marks omitted); *see also Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 180 (2d Cir. 2016) (court may set aside verdict "where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against him" (internal quotation marks and alteration omitted)). "In reviewing a Rule 50 motion, all credibility determinations and reasonable inferences of the jury are given deference and [the court] may not weigh the credibility of witnesses." *Id.*

### C. Qualified Immunity

Even if there was not probable cause to arrest the plaintiff, an officer will be entitled to qualified immunity if "arguable probable cause" existed—*i.e.*, if "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law." *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (internal quotation marks and citation omitted). The doctrine of qualified immunity provides a complete defense where "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v.*

*City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); *accord Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999). Its purpose is to "give [ ] government officials breathing room to make reasonable but mistaken judgments" and to protect "all but the plainly incompetent or those who knowingly violate the law." *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted)).

### III. Discussion

The only element of false arrest at issue on Wright's motions is whether Johnson's arrest was privileged (*i.e.*, whether it was supported by probable cause).[1] Drawing upon the jury's factual finding that Burns saw heroin fall from Johnson's person immediately before the arrest, Wright argues that judgment must be entered in his favor because the arrest of Johnson, by Burns, was necessarily supported by probable cause to believe that Johnson had possessed heroin. *See* Dkt. 73 at 11; *see also* Dkt. 50 at 10 n.5. That, in turn, Wright argues, necessitates entry of a judgment in his favor, either under Rule 50 or based on qualified immunity.

Wright is correct that the issue of probable cause as to the false arrest claims against both officers turns on what was known to the officers at the time that Burns arrested Johnson. The evidence at trial was uniform that Johnson was arrested once; that it was Burns, not Wright, who participated in the arrest; and that, at the time of the arrest, Wright was some distance away, still undercover. Tr. at 56, 79–80, 100, 228. Wright is also correct that there was evidence at trial supporting that Burns had probable cause to arrest Johnson, including Burns's testimony that, immediately before effecting the arrest, he had observed Johnson drop heroin. Tr. at 219, 228–

---

[1] Wright does not contest that the evidence at trial established the other elements of a false arrest claim: that (1) Wright intended to confine Johnson, and that Johnson (2) was conscious of, and (3) did not consent to, the confinement.

9

29. Wright is also correct that, in finding that Burns had observed Johnson drop heroin before arresting Johnson, the jury found a fact that necessarily equated to a finding of probable cause. Dkt. 73 at 11. *See Howard v. Schoberle*, 907 F. Supp. 671, 678 (S.D.N.Y. 1995) ("There is no question that probable cause exists to arrest a person found to be in possession of what appears to be narcotics."). Wright is, therefore, correct that the verdict against him on the false arrest claim is necessarily inconsistent with a factual finding by the jury.

Under Rule 50, however, the Court cannot enter judgment for Wright based on a mere inconsistency between the verdict and that finding. The standard governing a Rule 50(b) motion is not whether the verdict was internally consistent. "An inconsistent verdict is a possible ground for a new trial, but not for entry of judgment as a matter of law." *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 550 (S.D.N.Y. 2011), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016). Rather, the standard is whether, viewing the evidence in the light most favorable to the non-movant, Johnson, "a reasonable juror would have been compelled to accept the view of the moving party[,]" Wright, *MacDermid Printing Sols. LLC*, 833 F.3d at 180, *i.e.*, whether there was "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture," *Vangas*, 823 F.3d at 180. Here, there was evidence supporting the jury's verdict. Most notably, Johnson denied that he had had any heroin on him at all. Tr. at 60, 84.

Wright also pursues a finding of qualified immunity. But this bid fails because, on the facts found by the jury, the qualified immunity doctrine would not entitle Wright to judgment in his favor. Although the facts to which *Wright* attested (including that he saw Johnson holding numerous glassines of heroin outside the McDonald's) would have supplied (at a minimum) arguable probable cause, *the jury* did not find facts known to Wright that would have amounted

10

to such. The only finding the jury made as to Wright's knowledge was that he had reasonably believed he had observed Johnson hand an object or objects to Giscombe. That observation would not, alone, have supplied arguable probable cause to arrest Johnson. And the jury deadlocked as to the two other questions bearing on Wright's knowledge: whether Wright had reasonably believed that he had seen Giscombe hand Johnson money, and whether Wright had reasonably believed that he had seen Johnson sell heroin. That the jury found facts as to Burns's knowledge—that Burns had observed heroin drop from Johnson—does not avail Wright. It would have supported a claim of qualified immunity *as to Burns*. But because it does not bear on Wright's knowledge, it has no bearing on Wright's qualified immunity claim.

The Court, therefore, denies Wright's motions for judgment as a matter of law and entry judgment based on qualified immunity.

The Court understands Wright's motion for judgment as a matter of law to encompass a request, in the alternative, that the verdict be set aside and a new trial ordered. "If 'the jury's answers cannot be harmonized rationally, the judgment must be vacated and a new trial ordered.'" *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 82 (2d Cir. 2006) (quoting *Brooks v. Brattleboro Memorial Hosp.*, 958 F.2d 525, 530–31 (2d Cir. 1992)); *see also In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d at 550. That remedy is well warranted here given the plain inconsistency within the verdict. As noted, the jury's factual finding that Burns had "observe[d] Kevin Johnson drop heroin on the ground" cannot be squared with its verdict against Wright on the false arrest claim. Wright can be found liable to Johnson for false arrest only if Johnson's arrest was unsupported by probable cause and hence unlawful. The jury's factual finding, however, necessarily meant that the arrest was lawful.

The Court can do no more than speculate as to the reasons for the inconsistency. It may reflect that the jury, in considering the probable cause element in connection with the false arrest claim against Wright, did not consider, as required, the information known to the other police officers, including Burns, at the time of the arrest. It may reflect discomfort with the role of an undercover officer, as was Wright's charge that day. It may reflect a compromise verdict. Or, conceivably, it may reflect skepticism about Wright's reported observations of Johnson and/or whether they justified continued police observation of Johnson.[2] The salient point, however, is that, based on the jury's finding as to Burns's observations, this was a lawful arrest, making the verdict internally inconsistent.

A party that seeks relief based on an inconsistent verdict ordinarily must raise the issue of the inconsistency before the jury is excused. *See Kosmynka*, 462 F.3d at 83. Here, however, the Court did not give Wright's counsel a realistic opportunity to do so: The Court excused the jury immediately upon reading aloud the verdict form. Immediately thereafter, defense counsel raised the inconsistency. Counsel noted that, "in light of the answers to the special interrogatories[,] . . . there was independent probable cause for the arrest of plaintiff . . . . [T]he fact that Officer Burns saw plaintiff drop heroin[,] as the jury found, breaks the chain of causation between [the arrest and] what Detective Wright observed." Wright, through counsel, therefore raised the inconsistency at the earliest possible opportunity afforded him.

## CONCLUSION

For the reasons reviewed above, the Court sets aside the aspect of the jury's verdict finding defendant Wright liable for false arrest, and orders a new trial on that one claim. The

---

[2] Although not forming a basis for the ruling herein, the Court's view was that Wright's conduct was professional and that his trial testimony as to his observations of Johnson was credible.

jury's verdict otherwise stands. A scheduling order will follow shortly. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 71.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: May 4, 2017
New York, New York